# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|                                                      |     |                                    |
|------------------------------------------------------|-----|------------------------------------|
| **WADE A. ROBERTSON,**                               | )   |                                    |
|                                                      | )   |                                    |
| **Plaintiff,**                                       | )   |                                    |
|                                                      | )   |                                    |
| **v.**                                               | )   | **Civil Action No. 09-01642 (ESH)** |
|                                                      | )   |                                    |
| **WILLIAM C. CARTINHOUR, JR.,**                      | )   |                                    |
|                                                      | )   |                                    |
| **Defendant.**                                       | )   |                                    |

_____)

## MEMORANDUM OPINION

Before the Court are Plaintiff's Motion to Reconsider or in the Alternative Vacate This Court's Order of February 22, 2010; Plaintiff's Motion to Recuse Pursuant [to] 28 U.S.C. § 144; and Plaintiff's Emergency Motion to Strike or Vacate & to Stay All Further Proceedings. For the reasons set forth herein and at the hearing held on March 1, 2010, the Court denies plaintiff's motions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Wade Robertson filed a *pro se* complaint[1] on August 28, 2009, seeking declaratory judgment against William Cartinhour, Jr. (Compl. ¶ 24.) Robertson alleged that he and Cartinhour were "engaged together . . . in a continuing and active [business] partnership" located in the District of Columbia. (*Id.* ¶ 7.) Robertson further alleged that Cartinhour had signed a written indemnification agreement ("Indemnification Agreement") stating that Cartinhour "w[ould] not make any claims or demands, or file any legal proceedings against

_____

[1] After a countersuit was filed by the defendant, three attorneys from two different firms entered their appearance on plaintiff's behalf.

Wade A. Robertson," including claims concerning "any future injuries, losses, and damages not now known or anticipated, but which may later develop or be discovered." (*Id.* ¶ 9.) According to Robertson, Cartinhour's attorneys had sent Robertson written demands for money and had threatened a lawsuit against him. (*Id.* ¶¶ 12-15.) Robertson alleged that these demands breached the Indemnification Agreement and therefore he was entitled to a judgment declaring Cartinhour's obligations to release, hold harmless, and indemnify Robertson. (*Id.* ¶¶ 16, 24.)

In October 2009, Cartinhour filed his answer and a countersuit against Robertson. Cartinhour, an 82-year-old retiree, alleged that he had been introduced to Robertson, an attorney licensed to practice in the District of Columbia and California, in 2004. (Counter-Compl. ¶ 3.) According to Cartinhour, Robertson represented that he was seeking an investor on behalf of some plaintiffs and their counsel in a "multi-billion dollar [securities] claim with a high likelihood of success, including the anticipated recovery of attorney's fees in the hundreds of millions of dollars."[2] (*Id.* ¶ 6.) In reliance on Robertson's representations regarding the *Liu* securities case, Cartinhour entered into a partnership with Robertson and contributed $3,500,000.00 to that partnership between 2004 and 2006. (*Id.* ¶¶ 10, 15, 21.) Of these monies, $1,500,000.00 was contributed after *Liu* had been thrown out by Judge Scheindlin, because, according to Cartinhour, he did not know that the case had been dismissed and Robertson continued to represent that he was "confident that [their] position continue[d] to grow stronger and that [they] w[ould] ultimately be wildly successful in this endeavor." (*Id.* ¶¶ 17, 19, 21, Ex. D [Mar. 15, 2006 Letter from Robertson to Cartinhour].) Cartinhour also alleged that Robertson

---

[2] The case, *In re Initial Public Offering Sec. Litig.* (*Liu v. Credit Suisse First Boston Corp.*) ["*Liu*"], was dismissed by the district court in April 2005. 383 F. Supp. 2d 566 (S.D.N.Y. 2005), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, No. 05-3430, 2006 WL 1423785, at *1-2 (2d Cir. May 19, 2006), *cert. denied sub nom. Liu v. Credit Suisse First Boston Corp.*, 549 U.S. 1077 (2006).

had acted as his attorney and had advised him not only about investing in the partnership, but also with respect to his will, estate planning, and taxes.  (*Id.* ¶ 33.)  Cartinhour claimed that he had paid Robertson at least $50,000.00 for those services.  (*Id.*)

After the Supreme Court denied certiorari in *Liu* in December 2006, Robertson refused to respond to Cartinhour's inquiries about the whereabouts of the partnership funds or the status of the now-defunct litigation.  (*Id.* ¶ 25.)  He also refused to produce an accounting of the partnership funds or to return the monies Cartinhour had contributed, despite multiple demands from Cartinhour and his attorneys.  (*Id.* ¶¶ 30-32.)  Based on these allegations, Cartinhour countersued for accounting, fraud, breach of fiduciary duty, breach of partnership agreement, legal malpractice, negligent misrepresentation, conversion, and derivative action.  (*Id.* ¶¶ 34-81.)

Shortly after Cartinhour filed his answer and counter-complaint, the Court scheduled an Initial Scheduling Conference.  Prior to the conference Robertson filed a motion to dismiss and a motion for summary judgment.[3]  In his motions, Robertson argued that all of Cartinhour's claims were barred by the April 7, 2006 Indemnification Agreement.[4]  (Pl.'s Mem. of P. & A. in Supp.

---

[3] Robertson moved to file both of his motions under seal, as he claimed the business agreement attached to the motions required the parties to maintain the confidentiality of any partnership documents.  (Pl.'s Mem. of P. & A. in Supp. of His Mot. for Leave to File His Mot. to Dismiss Under Seal at 1.)  The Court found that the documents contained no proprietary information or trade secrets and that there was a "public interest" in the proceedings.  (Dec. 15, 2009 Tr. at 11:17-25.)  Although the Court allowed plaintiff the opportunity to identify information in the agreements he believed were proprietary, plaintiff did not do so, and Robertson's motions for leave to file his motions under seal were denied.  (*Id.*)

[4] The Indemnification Agreement, which was signed one year after the *Liu* case was dismissed by the district court, three days before Cartinhour contributed the last $1,500,000.00 to the partnership, and one month before the Second Circuit affirmed the dismissal of *Liu* (Counter-Compl. ¶¶ 16-18, 21), purports to "release, acquit, and forever discharge Wade A. Robertson personally" from

> any and all past, present and future claims, counterclaims, demands, actions, causes of action, liabilities, damages, costs, loss

of his Mot. to Dismiss ["Dismissal Mem."] at 18-19.)  Robertson also argued that Cartinhour's

claims of fraud were barred by the statute of limitations and could therefore not serve as a basis

to nullify the Indemnification Agreement.  (Pl.'s Mem. of P. & A. in Supp. of his Mot. for

Summ. J. at 17.)  He contended that Cartinhour, despite his age and not being a lawyer, should

have "exercised reasonable diligence in staying abreast of the class-action litigation" and if he

had done so, he would have become aware of his fraud claim at an earlier date.  (*Id.* at 18.)

In addition to the Indemnification Agreement, Robertson attached to his motions a

business agreement, an April 2006 partnership agreement,[5] and an attestation of no attorney-

client relationship, signed by Cartinhour on April 7, 2006, and stating that Cartinhour "ha[s] no

claims against Wade A. Robertson of any kind with respect to him in his profession as an

attorney or that could arise from any attorney-client relationship, whether actual or mistakenly

---

> of services, expenses, compensation, third-party actions, suits at
> law or in equity, of every nature and description, whether known
> or unknown, suspected or unsuspected, foreseen, or unforeseen,
> real or imaginary, actual or potential, and whether arising at law or
> in equity, under the common law, state or federal law, or any other
> law, or otherwise, including, but not limited to, any claims that
> have been or might have been asserted as a result of any
> relationship[.]

(Dismissal Mem., Ex. 3.)

[5] The partnership agreement indicates that Cartinhour contributed 99.9 percent of the
partnership's $3,503,500.00 in capital.  (Dec. 6, 2009 Aff. of Wade Robertson ["Dec. 6, 2009
Robertson Aff."], Ex. 2 at 5.)  It also states that Robertson has "exclusive" authority to manage
the business of the Partnership and may take any legal action he deems necessary.  (*Id.* at 6.)
Cartinhour has no control over the partnership and no authority to act on its behalf.  (*Id.*)  The
agreement also allows loans to individual partners from the partnership in any amount and does
not require repayment until liquidation of the partnership or Robertson's buyout of other
partners.  (*Id.* at 11-12.)  Liquidation can occur only by agreement of *all* the partners.  (*Id.* at 11.)
Although the original agreement required that operating and financial statements be provided to
all partners on a regular basis, these provisions were removed from the agreement in 2005.  (*Id.*
at 23; *see also* Dismissal Mem. at 21-22 ("There is in fact no obligation on the part of the
Partnership to provide an accounting of the funds.").)

assumed, or otherwise." (Dec. 6, 2009 Robertson Aff., Ex. 4.)  The attestation further states that "no exchange of any information, documents, or anything whatsoever between [Robertson and Cartinhour] establishes in any way any attorney-client relationship between [Robertson and Cartinhour.]" (*Id.*)

On December 15, 2009, the Court held an initial scheduling conference.  Neither of the parties attended the hearing, though both were represented by counsel.  (Dec. 15, 2009 Tr. at 3:6-16.)  In response to the Court's inquiry, Cartinhour's counsel explained that his client had inherited his money, spent "most of his time in his house," and "has certain social phobias." (*Id.* at 8:3-6.)  The Court was also informed that a complaint against Robertson had been filed by Cartinhour with D.C. Bar Counsel.  (*Id.* at 5:18-6:1.)  When asked about the whereabouts of the $3,500,000.00, Robertson's counsel stated that there was "no evidence that the money ha[d] been spent," but he provided no further information about the status of the funds.  (*Id.* at 10:4-5.)[6]

Based on these facts, the Court expressed concern regarding the unconscionability of the agreements entered into by Cartinhour and the substantial risk that Cartinhour, who is now 82 years old, would never recover any of his $3,500,000.00.  The Court *sua sponte* imposed an order freezing the money Cartinhour had contributed to the partnership and any assets obtained with those funds (*id.* at 10:6-10, 10:24-11:11; Dec. 16, 2010 Order) and ordered Robertson to file

---

[6] When asked about the nature of Robertson's role in the *Liu* case since Robertson had never entered his appearance in that litigation, Robertson's counsel indicated that he believed that Robertson had been "deeply involved in [the] litigation and coordinating with several of the other attorneys" and "drafting motions, drafting pleadings and my understanding representing clients." (Dec. 15, 2009 Tr. at 4:25-5:5.)  As subsequently explained by Robertson, he did not enter his appearance in the *Liu* case because he "had at one point been an employee for one of the defendants [*i.e.*, Credit Suisse] in the case" and he feared that the defendant "might somehow create this side show that might detract" from plaintiffs' case had Robertson's name appeared as an attorney.  (Jan. 11, 2010 Tr. at 16:5-9.)

an accounting as to how the partnership funds had been spent and a description of the work, if any, he had done on the *Liu* case.  (*Id.* at 11:9-11, 13:21-25; Dec. 15, 2009 Order.)

Following this hearing, Cartinhour filed his oppositions to the motions to dismiss and for summary judgment, attaching his affidavit and correspondence from Robertson regarding legal services that he had rendered to Cartinhour and a $40,000 check from Cartinhour to Robertson for that work.  Cartinhour raised a host of disputed issues of fact regarding the circumstances surrounding his various agreements with Robertson.  Thereafter, Robertson filed a motion for reconsideration of the Court's order enjoining him from spending or transferring the money that Cartinhour had contributed to the partnership.  In addition, on January 4, 2010, Robertson filed an affidavit with accompanying documentation regarding the hours he had worked on behalf of the partnership.  The sparse "breakdown" of Robertson's time stated that between September 2004 and February 2008, he had billed 7,714 hours to the *Liu* case.  (Jan. 4, 2010 Aff. of Wade Robertson, Ex. A at 1.)  That total included 3,297 hours billed in 2005, over 5,600 hours billed after the case was dismissed by the district court, and over 2,600 hours billed after the case was dismissed by the Second Circuit Court of Appeals.  (*Id.*, Ex. A at 2-60.)  The financial information provided by Robertson did not give any accounting as to how the $3,500,000.00 had been spent except to show that the partnership had only $4,541.00 left in cash and that loans had been made from the partnership to Robertson in the amount of $3,405,000.00.  (*Id.*, Ex. B at 4.)  As was learned at a subsequent hearing, these loans were taken by Robertson from the partnership in 2005 and 2007.  (Feb. 22, 2010 Aff. of William C. Cartinhour ¶ 11.)  A promissory note recording the 2005 loan indicates that Robertson borrowed $1,970.000.00 on April 18, 2005, coming due on or before January 1, 2030.  (*Id.*)  The second loan, taken by Robertson in 2007, was for $1,435,000.00 and not due until January 1, 2040.  (*Id.*)

On January 11, 2010, the Court held a second hearing at which Robertson, his attorneys, and attorneys for Cartinhour were present.  (Jan. 11, 2010 Tr. at 3:4-9.)  After hearing argument on Robertson's motions to dismiss and for summary judgment (*id.* at 3:10-6:6), the Court denied the motions on the grounds that there were "issues of fact" in dispute and that the facts as set forth by Cartinhour would support a finding that the agreements that Cartinhour had signed were unconscionable and/or the product of fraud and that Robertson, as either a partner or an attorney, had breached his fiduciary duty to Cartinhour, who had good reason to view Robertson as his lawyer, irrespective of the attestation he had signed on April 7, 2006.  (*Id.* at 6:7-7:16.)

Turning to the pending motion to reconsider the freezing order, the Court indicated that it planned to hold a preliminary injunction hearing pursuant to Fed. R. Civ. P. 65, but that Cartinhour was entitled to discovery regarding the status of the partnership funds and Robertson's assets and to an evidentiary hearing if the parties did not agree to a freezing order.[7] (*Id.* at 45:23-47:1.)  After consulting with his client (*id.* at 49:11-14), Robertson's counsel indicated that an agreement had been reached that they "would work together to verify the remaining assets that Mr. Robertson has and get them into some form from Citibank or some format that is going to be acceptable to counsel for Mr. Cartinhour."  (*Id.* at 50:4-7.) Cartinhour's counsel agreed, stating that the parties would talk about how to "get the bank discovery done" and requested a further status conference with the Court to decide what future proceedings would be needed.  (*Id.* at 50:10-15.)  In view of this agreement, the Court indicated that it would hold Robertson's motion for reconsideration in abeyance and ordered the parties to

---

[7] By this time, Cartinhour's counsel had already issued subpoenas to Citibank in Maryland for the partnership records, but Robertson had moved to quash them in the District Court for the District of Maryland.  (*Id.* at 43:10-18).  In addition, as was subsequently learned, after Robertson's motion was denied, Robertson appealed the order to the Fourth Circuit. (Supplemental Mem. in Supp. of Cartinhour's Emergency Mot. for TRO and PI at 2 n.1.)

propose a discovery schedule and to inform the Court if an evidentiary hearing would be necessary by noon the next day.  (*Id.* at 51:5-11, 52:6-10.)

The next day, Cartinhour filed an emergency motion for a temporary restraining order ("TRO") and a PI to prevent Robertson from contacting him outside the presence of his counsel. (Mem. of P. & A. in Supp. of Def.'s Emergency Mot. for TRO and Prelim. Inj. To Bar Wade Robertson From Contacting William C. Cartinhour Without the Presence of Counsel at 5-6.) Cartinhour alleged that Robertson went to his place of residence after the January 11 hearing in an attempt to settle the case and spoke to Cartinhour extensively outside the presence of his counsel.  (*Id.* at 2-3.)  Cartinhour further alleged that he had not spoken to his attorneys about the proceedings on January 11 when Robertson arrived at his apartment and that Robertson had told him that if he did not settle his claims, the litigation "would be prolonged and costly."  (*Id.* at 3; *see also id.*, Ex. 3 ["Jan. 12, 2010 Cartinhour Aff."] ¶¶ 2-7.)  The Court scheduled an immediate conference call with counsel for the parties, during which the Court asked if a hearing would be required to decide Cartinhour's motion or if Robertson would agree to a stay-away order. Counsel for Robertson indicated that he would speak with his client and let the Court and Cartinhour know whether a hearing would be needed.  The Court issued a minute order, scheduling a conference call for the next day, for this purpose and setting a hearing on the motion for January 14, 2010, at 11:00 a.m.

During the January 13 conference call, counsel for Cartinhour stated that after the January 12 conference call and after Cartinhour had filed the motion seeking a stay-away order, Robertson again went to Cartinhour's residence and attempted to speak with him through the door, although Cartinhour refused to allow Robertson into his apartment.  Despite this conduct, counsel for Robertson indicated that his client would consent to a TRO and a PI enjoining him

from contacting Cartinhour without prior written agreement or the presence of Cartinhour's

counsel.  A consent order was entered by the Court on January 15, 2010.  (*See* Dkt. No. 38.)

The parties next spoke with the Court on January 14 and asked it to refer the case to a

magistrate judge for mediation.  The parties also requested time to conduct limited discovery

regarding the partnership assets and Robertson's assets before meeting for settlement

discussions.  Despite Robertson's agreement to voluntarily engage in discovery regarding the

whereabouts of the partnership assets, he next moved on February 4 to quash Cartinhour's

January 20, 2010 subpoena for Robertson's account at Charles Schwab.  (Pl.'s Mem. of P. & A.

in Supp. of His Mot. to Quash at 1, Attach. A at 1, 6.)  Robertson argued that his personal

banking records were irrelevant to Cartinhour's claims, even though that was the account into

which the partnership funds had been transferred.  (*Id.* at 3.)  The Court denied Robertson's

motion to quash on February 5, 2010.  Later that day, Cartinhour filed a motion for leave to

amend his counter-complaint to add four additional claims based on disclosures made by

Robertson at the January 11, 2010 hearing.[8]

One week later, Robertson, again in contravention of his professed desire to resolve this

matter, filed notice of two interlocutory appeals, appealing from the Court's denials of his

motions to dismiss and for summary judgment, the December 16, 2010 freeze order, and the

order holding in abeyance Robertson's motion to reconsider that order.  Less than a week later,

Robertson filed notice of a third interlocutory appeal, this time from the Court's denial of his

motion to quash.  *See also* note 7, *supra*.

---

[8] The claims Cartinhour sought to add are: Rescission, Dissolution of W.A.R. LLP/Appointment
of Receiver, Constructive Trust over assets diverted by Robertson, and Declaratory Judgment
that the agreements signed by Cartinhour are unenforceable.  (Mem. of P. & A. In Supp. of Mot.
for Leave to Amend Counter Compl. at 2.)

On February 18, Robertson also filed an opposition to Cartinhour's motion for leave to amend his complaint, claiming that Cartinhour's proposed claims were duplicative and would prejudice Robertson by causing him to incur additional litigation costs.  The Court granted Cartinhour's motion for leave to amend on February 22, 2010.  (Feb. 22, 2010 Order.)   That same day, Cartinhour filed an amended answer, as well as two emergency motions based on information he had learned from production of Robertson's Charles Schwab account information.  The first motion sought a TRO and a PI freezing Robertson's assets to prevent dissipation of Cartinhour's financial contribution to the partnership.  The second motion sought to hold Robertson in contempt of Court for violating the Court's December 16, 2009 freeze order based on the fact that on January 8, 2010, Robertson had authorized checks totaling nearly $80,000 to be drawn from his Schwab account and made payable to Apley, Inc. and Diba Group, Inc.  (Def./Counter-Pl.'s Emergency Mot. for Contempt ¶ 5).  Apley Inc. was a registered corporation in Tennessee, Robertson's claimed state of residence (Compl. ¶ 5), that had been dissolved in May 2008.  Tennessee Dep't. of State Entity Detail: Apley, Inc., http://tnbear.tn.gov/ECommerce/Common/FilingDetail.aspx?FilingNum=000396425 (last visited March 5, 2010).  Both the check to Apley, Inc. and the check to Diba Group, Inc., a corporation registered in New York, were to be picked up by Wade Robertson at a local branch of Charles Schwab in Menlo Park, California.  (*Id.*, Ex. B at 2, 4.)  Robertson had also authorized the transfer of $30,000 from the Schwab account into a separate Citibank account that he controlled. (*Id.* ¶ 6.)

In response to Cartinhour's filings, Robertson continued his barrage of motions, asking the Court to reconsider or vacate its order granting leave to file an amended complaint on the grounds that the Court lacks jurisdiction to rule on the motion for leave to amend because

Robertson's appeal from the Court's denial of his motions to dismiss and for summary judgment divested the Court of jurisdiction.  (Mem. of P. & A. in Supp. of Pl.'s Mot. to Reconsider and/or Vacate ["Reconsider Mem."] at 1-2.)

The next morning, Robertson filed a motion for recusal pursuant to 28 U.S.C. § 144. (Mem. of P. & A. in Supp. of Pl.'s Mot. to Recuse Per 28 U.S.C. § 144 ["Recusal Mem."] at 2.) The Court then set a hearing on the outstanding motions for March 1, 2010.  (Feb. 23, 2010 Minute Order.)  Two days later, Robertson filed yet another motion seeking to vacate the order setting the March 1 hearing and to stay all further proceedings on the grounds that the Court lacked authority to proceed in light of his motion for recusal and the three pending interlocutory appeals he filed.  (Pl.'s Mem. of P. & A. in Supp. of His Emergency Mot. to Strike or Vacate & to Stay All Further Proceedings ["Stay Mem."] at 1.)

A hearing was held on March 1, 2010, on Cartinhour's motions for a TRO/PI and to hold Robertson in contempt, as well as Robertson's motion for reconsideration of the freezing order. The parties resolved Cartinhour's motion for a PI by agreeing to the entry of a new 20-day freezing order that provided that Robertson and those acting on his behalf are enjoined from spending, transferring, or otherwise using any of the funds that might have originated from the partnership account.  (March 1, 2010 Consent PI at 1-2.)  The PI also provided that Robertson would withdraw his appeals from the orders denying his motions to quash in D.C. and in Maryland.  (*Id.* at 3.)  In light of this new PI, the Court denied Robertson's motion for reconsideration as moot, for it vacated its earlier freezing order.  The parties again expressed a desire to settle the case and agreed to conduct limited discovery as to Robertson's assets. Accordingly, the Court continued the hearing until March 22, 2010 (*id.*), but indicated that it

would issue this written opinion to set forth its rationale for denying Robertson's motions for a recusal, a stay, and the vacation of certain court orders.

## ANALYSIS

## I.   JURISDICTION OF THE DISTRICT COURT UPON NOTICE OF APPEAL

### A.   Legal Standard

It is well-settled that "[t]he filing of a notice of appeal . . . 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'"   *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (per curiam)).   However, courts have "carved out a few narrow exceptions to this rule, such as where [a party] frivolously appeals . . . or takes an interlocutory appeal from a non-appealable order."   *Id.* at 1302-03 (internal citations omitted); *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 315 F. Supp. 2d 63, 66 (D.D.C. 2004) ("[A] notice of appeal from an unappealable order does not divest the district court of jurisdiction.").   Accordingly, "[i]nstead of allowing [a party] to willy-nilly deprive [a] Court of jurisdiction, thus bringing . . . proceedings to a standstill while a non-appealable ruling wends its way through the appellate process, the Court [may] disregard the notice of appeal from a non-appealable order and proceed with the case."   *Hammon v. Barry*, 752 F. Supp. 1087, 1092 (D.D.C. 1990) (internal citations and quotation marks omitted); *see also Ruby v. Sec'y of the United States Navy*, 365 F.2d 385, 389 (9th Cir. 1966) ("Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction.").

Under 28 U.S.C. § 1291, "all final decisions" of the district court are appealable.  The D.C. Circuit has construed the final judgment rule strictly, noting that "a district court's decision is ordinarily not final until it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  *Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper of the United States Senate,* 471 F.3d 1341, 1345 (D.C. Cir. 2006) (quoting *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1209 (D.C. Cir. 2004)).  One exception to the final order rule is found in 28 U.S.C. § 1292, which grants a court of appeals jurisdiction over certain interlocutory appeals.  28 U.S.C. § 1292(a)-(b).  Under § 1292(a)(1), courts of appeals have jurisdiction from orders granting or otherwise relating to injunctions.  § 1292(a)(1).  Additionally, under § 1292(b), a district court judge may certify that "an order 'involves a controlling question of law as to which there is substantial ground for difference of opinion' and further finds 'that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"  *Banks*, 471 F.3d at 1345 (quoting 28 U.S.C. 1292(b)).  However, if a party files an appeal upon such certification, "[t]hat application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."  28 U.S.C. § 1292(b).

In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949), the Supreme Court construed the final order rule to provide for appellate jurisdiction where there "is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it."  *Id.*  For an order to come within the *Cohen* doctrine, it must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. *Oscarson v. Office of Senate Sergeant at Arms*, 550 F.3d 1, 2 (D.C. Cir. 2008).  As the Supreme

Court has recognized, the collateral order doctrine is of a "modest scope" and is "narrow and selective in its membership." *Will v. Hallock*, 546 U.S. 345, 350 (2006).

### B.     Robertson's Motion to Reconsider

In his motion asking the Court to reconsider or vacate its February 22, 2010 Order granting Cartinhour leave to amend his counter-complaint, Robertson argues that his interlocutory appeal from the Court's order denying his motions to dismiss and for summary judgment divests the Court of its jurisdiction to decide any issue regarding the pleadings in this case. (Reconsider Mem. at 2.) This argument lacks merit, since it is well-settled that neither a denial of a motion for summary judgment nor a denial of a motion to dismiss are considered "final orders" that are appealable under § 1291. *See Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.3d 250, 253 (D.C. Cir. 2003) ("Ordinarily, orders denying motions to dismiss are not final decisions because such orders ensure that litigation will continue in the district court."); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 296 (D.C. Cir. 2006) ("[A]s a general rule, we lack jurisdiction to hear an appeal of a district court's denial of summary judgment, partial or otherwise."). And although courts have allowed interlocutory appeals under the collateral order doctrine from denials of motions to dismiss or for summary judgment where certain immunity defenses are invoked, *see Oscarson*, 550 F.3d at 2, no such defense has been raised here. Indeed, in denying Robertson's motions because the prevalence of disputed factual issues prevented it from granting them (*see* Jan. 11, 2010 Tr. at 7:5-8:14), the Court has not "conclusively determined [a] disputed question," *Oscarson*, 550 F.3d at 2, but has left such determination for a future date. The Court's denials are also intimately related to the merits of the action. Accordingly, the collateral order doctrine does not apply to the Court's Order of

January 11, 2010, and therefore the Court retained jurisdiction to grant Cartinhour leave to amend his counter-complaint.[9]

### C.    Robertson's Motion to Stay

In his motion seeking to vacate the Court's Order of February 23, 2010, and to stay all proceedings, Robertson again argues that the Court does not have jurisdiction to proceed with the case because of his multiple interlocutory appeals.[10]  (Stay Mem. at 5.)  As discussed *supra*, he cannot file an interlocutory appeal of the order denying his motions to dismiss and for summary judgment.  Robertson's two other appeals are from similarly non-appealable orders.  On February 18, 2010, Robertson appealed from the denial of his motion to quash in violation of the well-established rule that "[t]he denial of a motion to quash a subpoena is not . . . a final decision [for purposes of 28 U.S.C. 1291]."  *In re Sealed Case*, 655 F.2d 1298, 1300 (D.C. Cir. 1981).  As such, Robertson's appeal does not deprive the Court of jurisdiction to proceed.  *See McKesson*, 315 F. Supp. 2d at 66.

Robertson's third appeal is from the Court's orders freezing Cartinhour's contributions to the partnership and holding in abeyance Robertson's motion to reconsider that freeze order.  As discussed, 28 U.S.C. § 1292(a) provides appellate jurisdiction over appeals from orders

---

[9] None of the cases cited by Robertson in his motion for reconsideration provides any support for the argument that his appeal from garden-variety denials of summary judgment and dismissal fall within the collateral order doctrine.  (*See* Reconsider Mem. at 2-3.)  All of the cases he cites concern motions to dismiss that have been granted, *see Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1298-99 (11th Cir. 2003); *Davis v. United States*, 667 F.2d 822, 825 (9th Cir. 1982); *Hernandez v. Coughlin*, 18 F.3d 133, 134 (2d Cir. 1994); denials of motions to dismiss on qualified immunity grounds, *see May v. Sheahan*, 226 F.3d 876, 878 (7th Cir. 2000); or denials of motions to dismiss where a district court has certified the denial for interlocutory appeal.  *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063-64 (5th Cir. 1990).  None of these cases has any relevance to Robertson's interlocutory appeal.

[10] Robertson also argues that the Court does not have authority to proceed in light of his motion for recusal.  (Stay Mem. at 4-5.)  Because the Court finds that Robertson's motion is legally insufficient to require recusal, this argument is now moot.

concerning injunctions, such as Robertson's appeal from the Court's freeze order.  However,

Robertson filed a motion to reconsider that injunction on December 28, 2009, which the Court

held in abeyance.  Under Rule of Appellate Procedure 4, a notice of appeal filed after the

announcement of an order but before the Court disposes of a motion to reconsider that order

becomes effective to appeal the order *only when* the motion to reconsider is disposed of.  Fed. R.

App. P. 4(a)(4)(B)(i); *see also SEC v. Bilzerian*, No. 02-5061, 2002 WL 1998001, at *1 (D.C.

Cir. Aug. 29, 2002) (holding in abeyance appeal from orders where district court had not yet

decided motion for reconsideration).  Thus, Robertson's appeal from the December 16, 2009

Order is not "effective" and does not divest the Court of jurisdiction.[11]

## II.  RECUSAL PURSUANT TO 28 U.S.C. § 144

### A.    Legal Standard

To recuse a judge under 28 U.S.C. § 144, a litigant must submit, along with its motion, an

affidavit stating "the facts and the reasons for [its] belief that bias or prejudice exists."  28 U.S.C.

§ 144.  Section 144 "is mandatory and automatic, requiring only a timely and sufficient affidavit

alleging personal bias or prejudice of the judge."  *Bhd. Of Locomotive Firemen and Enginemen*

*v. Bangor & Aroostook R.R. Co.*, 380 F. 2d 570, 576 (D.C. Cir. 1967).  However, the mere fact

that a party has filed a § 144 motion, accompanied by the requisite affidavit and certificate of

counsel, does not automatically result in the challenged judge's disqualification.  *United States v.*

*Miller*, 355 F. Supp. 2d 404, 405 (D.D.C. 2005).  Rather, the statute only requires recusal upon

the filing of a "timely and sufficient affidavit."  28 U.S.C. § 144.  And, "[i]t is well settled that

the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency

---

[11] Robertson's third appeal was also from the Court's order holding his motion for
reconsideration in abeyance.  Clearly, this order was not a "final decision" within the meaning of
§ 1291 and is therefore non-appealable.

of a Section 144 challenge." *United States v. Haldeman*, 559 F.2d 31, 131 (D.C. Cir. 1976); *see also United States v. Mitchell*, 377 F. Supp. 1312, 1315 (D.D.C. 1974) ("Only the individual judge knows fully h[er] own thoughts and feelings and the complete context of facts alleged. It follows that only [s]he can be certain of the most equitable resolution."). Robertson's motion therefore is properly before the undersigned. [12]

"[T]he judge, in deciding whether to grant [a] recusal motion [pursuant to § 144], must accept the affidavit's factual allegations as true even if the judge knows them to be false." *SEC v. Loving Spirit Found., Inc.*, 392 F.3d 486, 496 (D.C. Cir. 2004). However, the affidavit "must state facts as opposed to conclusions, and while the information and belief of the affiant as to the truth of the allegations are sufficient, mere rumors and gossip are not enough." *United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) (internal citations omitted). "The identifying facts of time, place, persons, occasion and circumstances must be set forth, with at least that degree of particularity one would expect to find in a bill of particulars." *Id.* (internal citations omitted). Once it is established that the facts in the affidavit are stated with sufficient particularity,

> it must then be ascertained whether these facts would fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute. It is well established that the facts must give fair support to the charge of a bent mind that may prevent or impede impartiality. The basis of the disqualification is that personal bias or prejudice exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. The factual allegations must establish by more than a prima facie case, but not beyond a reasonable doubt, that the mind of the judge is closed to

---

[12] To the extent Robertson's motion for recusal also invokes 28 U.S.C. § 455 (*see* Recusal Mem. at 2), that statute "imposes a duty directly upon the judge to evaluate h[er] own conduct." *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981); *see also Clay v. Brown, Hopkins & Stambaugh*, 892 F. Supp 11, 13 (D.D.C. 1995) ("The case law interpreting [§ 455] requires that the movant first present a motion for recusal to the judge whose impartiality is at issue.").

> justice; that the judge has a personal bias or prejudice against the affiant which is of such a nature, and of such intensity, that it would render the judge unable to give the affiant the fair trial to which every litigant is entitled. Obviously, such a showing could rarely be made.

*Id.* at 475-76 (internal citations and quotations omitted).  Importantly, to be disqualifying, the alleged bias usually "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Liteky v. United States*, 510 U.S. 540, 554 (1994) (predispositions developed during proceedings are rarely sufficient). Generally speaking, a judge's bias is not "personal" if none of the attitudes cited in the affidavit "developed from sources other than court proceedings or evidence in the case." *Mitchell*, 377 F. Supp. at 1317; *see also Tynan v. United States*, 376 F.2d 761, 764-65 (D.C. Cir. 1967) (noting distinction between judicial determination derived from evidence and proceedings before court and one based on attitudes and conceptions originating elsewhere).

Under 28 U.S.C. § 455, which does not require a party to file an affidavit, a judge must recuse herself if the average citizen could reasonably question the judge's impartiality.  *Heldt*, 668 F.2d at 1271; *see also* 28 U.S.C. § 455(a)-(b) (requiring recusal if judge's "impartiality might reasonably be questioned" or if judge "has personal bias or prejudice concerning a party"). However, under this statute, the Court need not "accept[] as true" the facts alleged by a party in its papers.  *Heldt*, 668 F.2d at 1271.  "[T]he Court must begin its analysis of the allegations supporting . . . a request [for recusal under § 455] with a presumption against disqualification." *Cobell v. Norton*, 237 F. Supp. 2d 71, 78 (D.D.C. 2003).  As for what constitutes bias, the Supreme Court has held that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of

> prior proceedings, do not constitute a basis for a bias or partiality
> motion unless they display a deep-seated favoritism or antagonism
> that would make fair judgment impossible. *Thus, judicial remarks*
> *during the course of a trial that are critical or disapproving of, or*
> *even hostile to, counsel, the parties, or their cases, ordinarily do*
> *not support a bias or partiality challenge.*

*Liteky*, 510 U.S. at 555 (citation omitted) (emphasis added).  Indeed, "[t]o be disqualifying, the

court's bias and prejudice 'must stem from an extrajudicial source and result in an opinion on the

merits on some basis other than what the judge learned from his participation in the case.'"

*United States v. Barry*, 938 F.2d 1327, 1340 (D.C. Cir. 1991) (quoting *Grinnell*, 384 U.S. at

583).

Recusal is not required under section 455(a) where statements are "not sufficient to raise

the appearance of prejudice in the mind of a reasonable person who is familiar with all the facts."

*United States v. Barry*, 961 F.2d 260, 263 (D.C. Cir. 1992).  A motion to disqualify should not be

granted lightly or where it lacks factual support.  *Murchison v. Inter-City Mortg. Corp. Profit*

*Sharing & Pension Plans*, 503 F. Supp. 2d 184, 188 (D.D.C. 2007).  Moreover, the

> test [of objectivity in §455] should not be used by judges to avoid
> sitting on difficult or controversial cases.  . . .  [I]n assessing the
> reasonableness of a challenge to his impartiality, each judge must
> be alert to avoid the possibility that those who would question his
> impartiality are in fact seeking to avoid the consequences of his
> expected adverse decision.  Disqualification for lack of impartiality
> must have a reasonable basis.

*Haldeman*, 559 F.2d at 139 n.360; *see also United States v. Marin*, 662 F. Supp. 2d 155, 158

(D.D.C. 2009) ("A judge need not, however, 'recuse himself because of unsupported, irrational,

or highly tenuous speculation.'") (quoting *United States v. DeTemple,* 162 F.3d 279, 287 (4th

Cir.1998) (citation and internal quotation marks omitted)).

**B. Robertson's Recusal Motion**

The facts supporting Robertson's recusal motion are contained in the affidavit of Wade Robertson attached thereto.  (Recusal Mem. at 2; Pl. Wade Robertson's 28 U.S.C. § 144 Aff. of Bias ["Feb. 23, 2010 Robertson Aff."].)  The vast majority of Robertson's affidavit describes the Court's comments and rulings during the December 15, 2009 hearing.  (Feb. 23, 2010 Robertson Aff. ¶¶ 20-36.)  Robertson also argues "[o]n information and belief" that sometime between August and December 2009, the undersigned reviewed information that was not part of the record or engaged in *ex parte* communications with Cartinhour or his attorneys that were not made part of the record.[13]  (*Id.* ¶ 10.)

Taking these allegations as true, which it must, the Court finds Robertson's affidavit insufficient to require disqualification under § 144 or § 455.  While the Court acknowledges that it may have used intemperate language during the December 15, 2009 hearing, it was (justifiably, as it turns out) troubled by the documents, allegations, and other information before it, as well as the seeming inability of Robertson's counsel to answer even basic questions, despite having filed two dispositive motions.  However, as noted above, any "adverse attitudes" evinced toward Robertson were based only on the Court's consideration of issues raised by Robertson in his motions and do not qualify as the kind of prejudice or bias requiring recusal.  *See Grinnell*, 384 U.S. at 583; *see also Liteky*, 510 U.S. at 556 ("expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality requiring recusal).  As for the Court's rulings during that December hearing, the Supreme Court has observed that "judicial

---

[13] As indicated on the record at the hearing on March 1, 2010, the Court never had any *ex parte* communications with Cartinhour or his attorneys nor was it privy to any nonpublic information regarding the background of this litigation.

rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555.

Beyond a recitation of the Court's statements and rulings from that hearing, Robertson's affidavit is nothing more than a list of non-specific and conclusory allegations.  There are no identifying "facts of time, place, persons, occasion and circumstances," *Hanrahan*, 248 F. Supp. at 474, and Robertson merely guesses at what actions the Court may have taken during a nearly three-month window prior to the December 15, 2009 hearing.  (Feb. 23, 2010 Robertson Aff. ¶ 10.)  Nothing about the affidavit, save the recitation of the Court's statements on December 15, 2009, is "definite."  *See Miller*, 355 F. Supp. 2d at 406 (denying motion to recuse where affidavit was "not definite" and "offer[ed] no specifics").  Robertson's claims that the undersigned "developed a personal bias" and "pre-judged the facts" are simply conclusory generalities, insufficient to demonstrate bias or prejudice requiring disqualification.  *Bhd. Of Locomotive Firemen and Enginemen*, 380 F.2d at 577 (§ 144 affidavit "must allege specific facts and not mere conclusions or generalities").  Accordingly, the Court denies Robertson's motion for recusal.

## CONCLUSION

For the foregoing reasons, the Court denies Robertson's motion for reconsideration, his motion to stay the proceedings, and his motion for recusal.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge


DATE:  March 5, 2010