**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WADE A. ROBERTSON** | : |
| | : |
| Plaintiff/Counter-Defendant, | : |
| | : |
| **v.** | : **Case No.:      1:09-cv-01642 (ESH)** |
| | : |
| **WILLIAM C. CARTINHOUR, JR.,** | : |
| | : |
| Defendant/Counter-Plaintiff. | : |

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER RELEASING FUNDS
FROM THE REGISTRY OF THE COURT**

On February 18, 2011, a jury returned a verdict in favor of William C. Cartinhour, Jr. ("Cartinhour") and against Wade A. Robertson ("Robertson") for $7,000,000.00. The Court entered judgment on the verdict and on Cartinhour's claim for an equitable trust over the monies held in the Registry of the Court on February 25, 2011.

On March 1, 2010, this Court entered a Consent Preliminary Injunction under which monies held by Edward Griffin, Esquire, and Sutherland Asbill & Brennan, LLP, would be deposited into the Registry of the Court. This Court entered a preliminary injunction on March 26, 2011, ordering that all funds traceable to Cartinhour's investment in W.A.R., LLP be deposited into the Registry of the Court. As a result of those orders, the following deposits were made into the Registry of the Court:

| Date | Amount | Source |
|---|---|---|
| 03/9/2011 | $  20,713.75 | Griffin Whitaker |
| 03/9/2011 | $    5,000.00 | Sutherland Asbill & Brennan |
| 04/2/2011 | $600,074.92 | Charles A. Schwab & Sons, Inc. |
| 04/2/2011 | $    4,611.66 | Citibank |

The only money which arguably belonged to W.A.R., LLP, was the Citibank deposit. Those funds should be held pending a request from the Chapter 7 trustee of W.A.R., LLP, abandonment of those funds by the Trustee, dismissal of the Chapter 7 case or further motion. The rest of the funds are properly payable to Cartinhour and should be released, immediately.

During the course of the February 25, 2011 status conference, the Court inquired into whether a "conservator" needed to be appointed for Cartinhour.  Cartinhour's position is that although he was horribly abused by Robertson, he can manage his own financial affairs. *Cartinhour's Affidavit is attached hereto as Exhibit A.*

As a general rule, Federal courts do not get involved in guardianship matters, which are traditionally local in nature, and where states have a direct interest in their citizens and state laws and judges are designed to address the matter and are best able to resolve those issues. However, Federal courts do occasionally address the issue, usually in terms of capacity to sue and be sued under Fed.R.Civ.P. 17.  Even in that context, however, Federal courts are constrained to consider capacity under the laws of the state of domicile of the party whose capacity is in question. "Capacity of an individual, not acting in a representative character, to sue or be sued in the federal courts is ordinarily to be determined by the law of his domicile." *Donnelly v. Parker*, 486 F.2d 402, 406 (D.C. Cir. 1973)(footnote omitted)(writ of mandamus will not issue compelling trial judge to order a mental examination of plaintiff).  Further, a court contemplating declaring a party incompetent triggers that party's right to due process under U.S. Const. Amend. V, since that declaration involves taking away liberty and property interests.  *See, e.g. Thomas v. Humfiled*, 916 F.2d 1032 (5th Cir. 1990)(reversing the trial court's decision to appoint a guardian *ad litem* for a plaintiff after examinations by a mental health professional but without any hearing on the matter after the reports issued).

The undersigned counsel is keenly aware of the obligations of counsel in a case where there is a question of capacity.  Rule 1.14 of the Rules of Professional Conduct for attorneys both in the District of Columbia and Maryland provide as follows:

> When the lawyer reasonably believes that the client has diminished capacity and is at risk of **substantial . . . financial . . . harm unless action is taken and cannot adequately act in the client's own interest, the lawyer MAY take reasonably necessary protective action,** including consulting with individual or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a surrogate decision maker. (emphasis supplied).

The comments to the rule add:

> [1]      The typical client-lawyer relationship is based upon the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters.  When the client is a minor or suffers from a diminished mental capacity, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects.  In particular, a severely incapacitated person may have no power to make legally binding decisions.  Nevertheless, a client with diminished capacity often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client's own well-being. . . . So also, it is recognized that some persons of advanced age can be quite capable of handling routine financial matters while needing special legal protection concerning major transactions. Many people with intellectual disabilities, while lacking sufficient capacity to make binding decisions, have and are capable of expressing opinions about a wide range of matters that affect their lives.
>
> ****
>
> [5]      If a lawyer reasonably believes that a client is at risk of substantial physical, financial or other harm unless action is taken and that a typical client-lawyer relationship cannot be maintained as provided in paragraph (a) because a client lacks sufficient capacity . . . to make adequately considered decisions in connection with the representation, then paragraph (b) permits the lawyer to take protective measures deemed necessary.  Such measures could include:  consulting with family members, using a reconsideration period to permit clarification or improvement of circumstances, using voluntary surrogate decision making tools such as durable powers of attorney or consulting with support

> groups, professional services, adult protective agencies or other individuals and entities that have the ability to protect the client. In taking any protective action, the lawyer should be guided by such factors as the wishes and values of the client, to the extent known, the client's best interest, the goal of intruding into the client's decision-making autonomy to the least extent feasible, maximizing client capacities and respecting the client's family and social connections.

Thus, under the Code of Professional Conduct, an attorney must believe there is diminished capacity and risk of substantial financial harm before considering whether to take any action.  But, even in that case, the attorney must do his best to respect the client's wishes, if known.

There is no evidence under Maryland law that Dr. Cartinhour would qualify for the appointment of a guardian.  Maryland law provides at MD Ann. Code Estates & Trust Section 13-201:

> c)  *Disabled persons.*- A guardian shall be appointed if the court determines that:
>
> > (1) The person is unable to manage his property and affairs effectively because of physical or mental disability, disease, habitual drunkenness, addiction to drugs, imprisonment, compulsory hospitalization, confinement, detention by a foreign power, or disappearance; and
> >
> > (2) The person has or may be entitled to property or benefits which require proper management.

The Rule effectuating that statute, Maryland Rule 10-301, requires the certificates under Maryland Rule 10-202, which provides:

> (a)  *Generally required.*- Except as provided in section (d), if guardianship of the person of a disabled person is sought, the petitioner shall file with the petition signed and verified certificates of (1) two physicians licensed to practice medicine in the United States who have examined the disabled person, or (2) one licensed physician or who has examined the disabled person and one licensed psychologist or certified clinical social worker who has

seen and evaluated the disabled person. An examination or evaluation by at least one of the health care professionals under this subsection shall occur within 21 days before the filing of the petition.

(b)  *Contents.-* Each certificate shall state: (1) the name, address, and qualifications of the person who performed the examination or evaluation, (2) a brief history of the person's involvement with the disabled person, (3) the date of the last examination or evaluation of the disabled person, and (4) the person's opinion as to: (A) the cause, nature, extent, and probable duration of the disability, (B) whether institutional care is required, and (C) whether the disabled person has sufficient mental capacity to understand the nature of and consent to the appointment of a guardian.

The undersigned has spoken at length with Cartinhour on the subject of the Court's concerns and has spoken to his psychiatrist, Dr. Stanley Slater.  Having conducted an investigation, the undersigned is not able to advocate that Cartinhour lacks capacity to make his own financial decisions.  The undersigned is aware of no fact that would indicate that Cartinhour would squander or give away any recovery in this case, including the money currently held in the Registry of the Court.

This does not diminish the fact that Cartinhour, who is almost 84 years of age, is hard of hearing, has "stage fright" and a number of maladies that accompany a man of his age. Cartinhour also recognizes that he is a "mark" who can be (and has been) taken advantage of if he is not careful.  But at his core, Cartinhour can make his own financial decisions as long as he sticks to what he knows and stays away from investing in "personal" businesses where he is a principal.

The Court, and the undersigned, must be wary of intruding so far upon the liberty rights of Cartinhour to make his own decisions absent clear and objective evidence that, on a day-to-day basis, Cartinhour is unable to manage his own financial affairs.  Certainly, Cartinhour's

performance as a witness before a jury or even in a deposition where he is facing an adversary is not a fair test of how he makes decisions about his current financial affairs.

Cartinhour believes that he can manage his own financial affairs.  He believes that he can out perform a trustee or guardian in these troubled financial times because, among other things, a fiduciary concerned about loss would be extremely conservative in investing strategy and may well pay a premium for a safe investment (buying high instead of low) that would yield a minimal return.  *See Cartinhour's Affidavit attached hereto as Exhibit A.*

If the Court is not convinced that funds should be released to Cartinhour, it should conduct a further hearing – on an *ex parte* basis – or refer the matter to a Magistrate Judge or another District Judge (if Robertson raises the specter of a conflict due to such *ex parte* contact) for that purpose.  Robertson has absolutely no stake in this matter and should not be permitted to be involved in issues involving Cartinhour's liberty and property interest.  Indeed, this Court gave Robertson multiple opportunities to examine Cartinhour and question his capacity – an opportunity that Robertson did not exercise.  He has no further interest in the matter.

The undersigned counsel has no evidence that would allow them to substitute their personal beliefs and values for the expressed desires of Cartinhour.  Although aged, he has not demonstrated that he cannot make his own decisions – so long as he is not misled again.

## CONCLUSION

For the foregoing reasons, Cartinhour requests this Court to immediately direct the clerk of the Court to Release the funds held in the Registry, less expenses, except for 4,611.66, and to grant such other and further relief as is just and proper.

Respectfully submitted,

_____*/s/ Patrick J. Kearney*_____
Robert S. Selzer, Esquire (#942342)
Patrick J. Kearney, Esquire(#382290)
Michael J. Bramnick, Esquire (#500756)
Selzer Gurvitch Rabin Wertheimer Polott Obecny & Strickland, PC
4416 East West Highway, Suite 400
Bethesda, Maryland 20814-4568
(301) 986-9600
Email: rselzer@sgrwlaw.com
           pkearney@sgrw.law.com
           mbramnick@sgrwlaw.com

*Attorneys for Defendant/Counter-Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF this 26th day of April, 2011 upon:

Wade A. Robertson.

_____*/s/ Patrick J. Kearney*_____
Patrick J. Kearney