**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WADE ROBERTSON,

*Plaintiff / Counter-Defendant*,

v.                                                                          Civil Action No. 09-1642 (ESH)

WILLIAM C. CARTINHOUR, JR.,

*Defendant / Counter-Plaintiff.*

## <u>ORDER</u>

On February 17, 2023, Frederick E. Edwords, the personal representative for the Estate of

William C. Cartinhour, Jr., moved under Federal Rules of Civil Procedure 25(a) and 69(a)(1) and

D.C. Code § 15-101 to substitute himself as Defendant/Counter-Plaintiff and to revive the

judgment.  This is the latest chapter in a long-running dispute between the original

Plaintiff/Counter-Defendant, Wade Robertson, and William C. Cartinhour, Defendant/Counter-

Plaintiff.

Over a decade ago, Robertson initiated this suit against Cartinhour, alleging that

"Robertson and Cartinhour were engaged together in a business partnership" and that Cartinhour

had "breach[ed]" an agreement the parties had entered into as part of that partnership.  Dkt. 1 at

3, 4 (Compl. ¶¶ 7, 16).  In response, Cartinhour asserted counterclaims.  Dkt. 2; Dkt. 61.

Cartinhour alleged that Robertson, who was "a lawyer licensed to practice law," "advised

Cartinhour that he was searching for an investor, on behalf of the class plaintiffs [he

represented], to finance out-of-pocket costs that would be incurred in the [l]itigation."  Dkt. 61 at

1–2 (Am. Counter Compl. ¶¶ 3, 5).  Cartinhour alleged that Robertson "further represented to

Cartinhour that the [l]itigation involved a multi-billion dollar claim with a high likelihood of

success" and that "if Cartinhour contributed funds to finance the [l]itigation costs[,] he would receive a fixed percentage of the recovery received by plaintiffs' counsel." *Id.* at 2 (Am. Counter Compl. ¶ 6). Cartinhour stated in his counterclaims that he contributed a total of $3.5 million to Robertson to fund this litigation, *id.* at 7 (Am. Counter Compl. ¶ 28), none of which was utilized to fund the litigation because, unbeknownst to Cartinhour, the complaint was dismissed with prejudice in April 2005, *id.* at 5 (Counter Compl. ¶ 18). Cartinhour alleged that he "made multiple demands for an accounting and return of his funds," *id*. at 8 (Counter Compl. ¶ 35), which Robertson, for his part, characterized as breaches of the agreement in his complaint, Dkt. 1 at 4 (Compl. ¶ 16).

A jury trial was held on both set of claims in 2011 before Judge Ellen Huvelle. On February 18, 2011, the jury returned a verdict in favor of Cartinhour, finding "Robertson liable for breach of fiduciary duty as a business partner and as a lawyer and for legal malpractice." Dkt. 165 at 1. The Court entered judgment on February 25, 2011, in favor of Cartinhour on Count III (breach of fiduciary duty), Count V (legal malpractice), and Count XI (equitable trust) of Cartinhour's counter-complaint. *Id.* (citing Dkt. 61 (Am. Counter Compl.)). In the final judgment, Cartinhour was awarded "$3.5 million dollars in compensatory damages and $3.5 million in punitive damages together with costs and post-judgment interest." *Id.* at 2. Robertson's claims were dismissed with prejudice based on "the Jury's finding as to the unenforceability and invalidity of the Release/Indemnification Agreement." *Id.* at 1.

On August 8, 2011, the Court was notified that Cartinhour had received a check in the amount of $626,295.84 from Robertson in partial satisfaction of the judgment. Dkt. 205. And on July 19, 2011, the Court condemned funds held in a "court registry that were placed there

2

pending the outcome of a jury trial," totaling another $4,611.66.  Dkt. 205, 240.  As of February 17, 2023, Robertson still owed Cartinhour approximately $6,369,092.50.

On March 29, 2021, Cartinhour passed away, *see* Dkt. 246-1, and a personal representative, the movant Frederick Edwords, was appointed for his estate on April 14, 2022, *see* Dkt. 246-2.  On February 17, 2023, Edwords moved to substitute himself, acting as personal representative of Cartinhour's estate, as the party in this suit pursuant to Federal Rule of Civil Procedure ("Rule") 25(a)(1).  Edwords also moved to renew the judgement, which was set to expire on February 24, 2023, pursuant to D.C. Code § 15-103.  Dkt. 244.  Robertson opposed the motion, Dkt. 245, and Edwords filed a reply, Dkt. 246.

## A.  Motion to Substitute

"If a party dies and the claim is not extinguished," Rule 25 permits "the decedent's successor representative" to move to substitute the movant for the deceased party.  Fed. R. Civ. P. 25(a)(1).  In light of Cartinhour's passing, Edwords has done just that:  As the personal representative of Cartinhour's Estate, Edwords has moved to substitute himself for Cartinhour in this suit.  *See Sinito v. U.S. Dep't of Just.*, 176 F.3d 512, 516 (D.C. Cir. 1999) ("[W]e have held . . . that an executor or administrator of a decedent's estate is a proper party for substitution.").  In support of this request, Edwords provides Cartinhour's death certificate and documentation from the Montgomery County, Maryland Register of Wills appointing Edwords as the personal representative of the Estate.  Dkt. 246-1; Dkt. 246-2.  In response, Robertson contends that this showing is insufficient for several reasons.

First, Robertson points out that Edwords' proposed order requests that "the Estate [be] substituted as defendant/Counter-Plaintiff in this action," Dkt. 244-2, and that "[a]s a general rule, under [Rule] 17(a), the estate cannot be a plaintiff in a lawsuit," *Est. of Manook v. Rsch.*

*Triangle Inst., Int'l & Unity Res. Grp.*, 693 F. Supp. 2d 4, 16 (D.D.C. 2010).  This argument makes a mountain out of a mole hill.  Elsewhere in Edwords's motion he states that he is bringing the motion in his capacity as personal representative on behalf of the Cartinhour Estate. Dkt. 244 at 1; Dkt. 244-2.  And the "appointed executor or administrator of the decedent's estate is often the proper party," *Breen v. Chao*, 322 F.R.D. 427, 429 (D.D.C. 2017), which in the District of Columbia is the personal representative, *Est. of Manook*, 693 F. Supp. 2d at 17 ("The term personal representative is strictly construed under D.C. law to mean only the decedent's executor or administrator.").  Accordingly, the Court is unpersuaded that the motion should be denied for the inartful phrasing of the proposed order alone.

Next, Robertson argues that Edwords's motion is improper because he has not properly served all necessary parties as required by Rule 25.  Rule 25(a) requires that a motion to substitute a proper party "be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4."  Fed. R. Civ. P. 25(a)(3).  "In identifying the nonparties for whom service is required, Rule 25(a) 'obviously [does not require service upon] every person in the United States who happens not to be a party to the lawsuit in question.'"  *Breen v. Chao*, 322 F.R.D. 427, 430 (D.D.C. 2017) (quoting *Atkins v. City of Chicago*, 547 F.3d 869, 873 (7th Cir. 2008)).  "Instead, the rule requires service upon 'nonparties with a significant financial interest in the case, namely the decedent's successors (if his estate has been distributed) or personal representative ([if] it has not been).'"  *Id.* (quoting *Atkins*, 547 F.3d at 873).  Robertson contends that his former lawyer, Ty Clevenger, who currently has a lawsuit pending against the late Cartinhour, is such a party in interest.  But the mere existence of that separate lawsuit—which a New York state court dismissed—does not mean that Clevenger has a significant financial interest in this suit. Although Clevenger has appealed that loss, Robertson has not shown that Clevenger has

obtained a judgment against Cartinhour, much less that he has a significant financial interest in this case.

Robertson also argues that Edwords has not satisfied the requirements under D.C. law to operate as a personal representative of the Estate for the purposes of collecting on the judgment in this case. *See Est. of Scherban v. Suntrust Bank*, No. 15-1966, 2016 WL 777913, at *1 (D.D.C. Feb. 26, 2016) (Federal Rule of Civil Procedure 17(b)(3) "states that for an individual acting as a representative, his capacity to sue or be sued is determined "by the law of the state where the court is located."). This is because the Estate is being administered in Maryland, which makes Edwords a foreign personal representative in the District of Columbia.

Generally speaking, D.C. law does not require "[a] foreign personal representative . . . appointed to administer the estate of a decedent not domiciled in the District of Columbia, but which has property located here," "to obtain letters from the Superior Court of the District of Columbia." *In re Est. of Monge*, 841 A.2d 769, 773–74 (D.C. 2004) (citing D.C. Code § 20–341(a)); *see id*. at 773 n.14 (explaining that "'[l]etters' are 'the official instrument by which a personal representative is appointed by the Court to administer the estate of a decedent'" (citing D.C. Code § 20–101(h))). Under D.C. law, moreover, "[a] foreign personal representative may exercise all the powers of such office and may sue and be sued in the District of Columbia, subject to any statute or rule relating to nonresidents." D.C. Code § 20–341(b).

One question, however, remains regarding Edwords's service in the District of Columbia as the personal representative of the Cartinhour Estate: D.C. law requires "[a] foreign personal representative administering an estate which has property located in the District of Columbia [to] file with the Register [of Wills] a copy of the appointment as personal representative and a copy of the decedent's will." D.C. Code § 20-341(b). The record does not reflect whether Edwords

has taken this step, nor has Edwords or Robertson addressed the questions of (1) whether that requirement applies to this case; (2) whether Edwords has, in fact, made such a filing; and (3) whether such a filing is a necessary precondition to empowering a foreign personal representative to act within the jurisdiction, such that any act taken prior to the filing should be treated as a nullity, or instead that such a filing is a regulatory obligation that exists separate and apart from the representative's authority to act.

Because neither party has addressed these questions, the Court will reserve decision on whether to substitute Edwords as the counter-plaintiff in this case (and thus whether to revive the judgement), pending further briefing and factual submission.

**B.     Motion to Renew Judgment**

Assuming without deciding that Edwords's motion to substitute is granted, the Court considers next his motion to renew the judgement.  "The life of a judgment issued by a federal district court is determined by the law of the state jurisdiction wherein the federal court is located." *Belkin v. Islamic Republic of Iran*, No. 06-0711, 2020 WL 4219783, at *2 (D.D.C. July 23, 2020) (citing Fed. R. Civ. P. 69(a)(1)).  Under D.C. law, "every final judgment or final decree for the payment of money rendered in the United States District Court for the District of Columbia . . . is enforceable . . . for [a] period of twelve years."  D.C. Code § 15-101(a).  Here, that would mean that the judgment entered against Robertson was set to expire on February 24, 2023.  D.C. law does, however, permit a court to enter an order reviving the judgment for another twelve-year period.  D.C. Code § 15-101(b); *see also Nat'l Bank of Wash. v. Carr*, 829 A.2d 942, 944–45 (D.C. 2003).   That is the relief that Edwords's motion to revive seeks.

Robertson advances two arguments for why the Court should deny Edwords's motion to revive.  He first contends that the judgment has already expired and therefore cannot be renewed.

Dkt. 245 at 28–30.  He argues that "[b]ecause no order of revival was timely sought . . . before the expiration date of February 24, 2023, the civil judgment automatically and irrevocably expired by operation of law."  *Id.* at 30.  But Robertson is wrong on the law.  Section 15-101(b) permits a court to revive a judgment as long as the motion seeking such relief is filed prior to the expiration of the judgment.  The fact that the judgment may expire prior to the time the motion to revive is ruled on by the court is immaterial to the merits of the motion.  *See Nat'l Bank of Wash.*, 829 A.2d at 944.  Here, Edwords filed his motion to revive on February 17, 2023.  Dkt. 244.  Although he did cut it close, that motion was filed before the judgment was set to expire on February 24, 2023.  Accordingly, the motion is timely, and Robertson's argument is unpersuasive.

Robertson advances a second argument for why the judgment should not be revived: He contends that the judgment originally was procured by fraud and therefore cannot be reimposed.  Dkt. 245 at 32.  Specifically, Robertson argues that Cartinhour committed fraud when he omitted from one of his interrogatory responses the fact that he had been diagnosed as a paranoid schizophrenic in the late 1950s or early 1960s.  *Id.* at 37–39.

As an initial matter, it is unclear that an allegation of fraud is a valid defense to a motion to revive a judgment under § 15-101(b).  As this Court has previously noted, "[t]here is little case law discussing D.C. Code §§ 15-101 and 15-103 and when a court may issue an order of revival."  *Blackman v. District of Columbia*, 239 F. Supp. 3d 22, 24 (D.D.C. 2017).  Although the "D.C. Court of Appeals has stated that courts should grant an order of revival if the defendant offers 'no other defense or cause why the judgment should not be revived,'" *id.* (quoting *Nat'l Bank of Wash.*, 829 A.2d at 945), the Court is unaware of any case law addressing whether fraud

in the procurement is a defense to a motion to revive—or whether, instead, the party alleging

fraud needs to move, if possible, to reopen the judgment.

But even assuming that fraud in the procurement is a defense to the motion to survive,

and, assuming further, that Robertson could demonstrate that Cartinhour (or his counsel)

intentionally omitted reference to his psychiatric diagnosis during discovery and that such an

omission in discovery constituted fraud, Robertson's motion would still fail. *Cf. Summers v.

Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004) (noting "[f]ailure to disclose or produce

materials requested in discovery can constitute 'misconduct' within the purview of" Rule

60(b)(3), but not discussing whether such misconduct could be the basis of fraud).   That is

because, on Robertson's theory, he must satisfy the requirements of Federal Rule of Civil

Procedure 60(b), which permits a federal court to relieve a party from a final judgment upon a

finding of fraud.  *See* Dkt. 245 at 35.  But one of Rule 60(b)'s requirements is that "the victim of

misconduct (or of fraud or misrepresentation) [must] demonstrate actual prejudice" by showing

"that the misconduct [or fraud or misrepresentation] foreclosed full and fair preparation or

presentation of its case."  *Summers*, 374 F.3d at 1193 (internal quotation marks omitted).

Robertson makes no argument that he was actually prejudiced by Cartinhour's omission

of his diagnosis in a single interrogatory response.   Nor could Robertson make such a showing

based on the evidence he has presented to the Court.  As that evidence makes clear, Cartinhour's

diagnosis was decades old by the time the relevant events transpired in this case:  Cartinhour was

allegedly diagnosed *and treated* in the late 1950s or early 1960s; the events in this case began in

2004, at least 40 years after the diagnosis.  *See* Dkt. 245 at 37; Dkt. 61 at 1 (Am. Compl. ¶ 3).

There is no evidence that Cartinhour's diagnosis resulted in symptoms that went untreated during

the relevant period—that is 2004, onward—or that Cartinhour's condition (if any, at the relevant

time) impaired his judgment, recollection, or ability to enter into contractual agreements.
Moreover, Robertson subpoenaed the psychiatrist who treated Cartinhour during the relevant
period and received records that included the doctor's treatment notes.  *See* Dkt. 172-10.
Robertson also deposed the psychiatrist to inquire about the contents of the treatment notes.  *Id.*
There is no indication that Cartinhour's prior diagnosis, though not the subject of the deposition,
was withheld from Robertson during these aspects of the discovery process.  As a result,
Robertson has failed to make a showing of actual prejudice that is necessary for the Court to
deny the motion to revive—even assuming that fraud in the procurement is a defense to a motion
to revive under D.C. law and assuming that fraud occurred.

Finally, the Court notes that on November 25, 2014, Robertson was enjoined by this
Court from "filing new matters related to . . . [this case,] D.C. District Court Case No. 09-1642,"
due to his incredibly numerous frivolous and abusive filings.  Dkt. 246-3.  The assertions of
fraud that Robertson now makes are reminiscent of these prior filings.  In this regard, Robertson
is cautioned that he should not use any further briefing on Edwords's motion to revive as an
opportunity to circumvent the 2014 order and reassert frivolous claims.

## CONCLUSION

For the reasons explained above, it is hereby **ORDERED** that Edwords' motion to
substitute party and renew judgement, Dkt. 244, is **GRANTED** in part and **RESERVED** in part.

Accordingly, it is further **ORDERED** that Edwords file with the Court supplemental
briefing and evidence on or before January 31, 2024, on this outstanding issue; Robertson may
respond on or before February 14, 2024, and Edwords may reply on or before February 21, 2024.
The parties are cautioned that their briefing must be limited to the questions set forth above.

9

Edwords's opening brief and Robertson's response should not exceed ten pages and Edwords's

reply should not exceed five pages.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  January 12, 2024